**Affirmed; Opinion Filed June 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00697-CR

### ALLEN MAURICE LITTLE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-0951721-Y**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang
Opinion by Justice Lang

This is an appeal from the trial court's order that the defendant pay $53,173.95 in restitution to the victim, Edward Arnold II, pursuant to TEX. CODE CRIM. PROC. ANN. art. 42.037(a). In one issue, appellant asserts the evidence presented at the restitution hearing is insufficient to support restitution in this amount. We affirm the judgment of the trial court.

### I. FACTUAL AND PROCEDURAL CONTEXT

In another opinion, we affirmed Heider's conviction for aggravated assault.[1] However, we decided in favor of Little on his position that the $274,155.07 in restitution awarded by the trial court was error. Accordingly, we set aside the amount of restitution, remanded the case to the trial court for a hearing to determine a just amount of restitution, and abated the appeal.

---

[1] *Little v. State*, No. 05-14-00697-CR, 2015 WL 5022283 (Tex. App.–Dallas August 25, 2015, no pet.).

Upon remand, at the restitution hearing, the State offered evidence regarding the medical expenses incurred by the victim of the aggravated assault. The State offered two exhibits. Trial exhibit 16 is an invoice from Texas Vascular Associates, which showed an outstanding balance of $5,160 for medical treatment provided to Arnold. Trial exhibit 17 showed that the Crime Victims Compensation Fund has paid $38,569.95 directly to medical services providers for Arnold's medical treatment.

Also, the State called as witnesses Arnold and his father, who testified regarding Arnold's medical procedures and expenses. Arnold described six surgeries in which physicians replaced portions of his skull. Then, Arnold described two surgeries in which physicians implanted "cochlear implants." Additionally, Arnold testified that he underwent two surgeries in which a reconstructive surgeon "tried to get [his] head to look rounder." Arnold's father testified that Arnold has another surgery scheduled for six months' from the date of the restitution hearing to "put another cap in [Arnold's] head."

As to his medication, Arnold generally described several including one for sleep, two for seizures, and one for migraines. According to Arnold, he pays for all of these medications out-of-pocket because Medicare, his only health insurance provider, will not pay. Arnold recalled that his most recent bill for medication was $120, while, on occasion, his monthly bill for prescriptions has been as low as $40.

Arnold testified that since 2008 Medicare has been paying all but a "co-pay" of $20 he paid for each doctor visit. Arnold stated he has "probably" been to the emergency room more than five times for treatment for seizures "this year." According to Arnold's father, Arnold has had "at least four" seizures "in the last two years," each of which has required a visit to a hospital.

Arnold and his father testified to numerous occasions on which Arnold has been required to visit "specialized" doctors. Specifically, Arnold stated he saw an infectious disease doctor once every few days in July of 2015 and then again "after October," and that he saw his family doctor twice a week from October 2015 until the week of the restitution hearing for blood tests. Also, Arnold testified that he went to physical therapy Monday through Friday for "two to three months" following his release from the hospital in February 2009.

Arnold's father said he drove Arnold to see a neurologist "at least 10, 15 times" over the "course of two years." Additionally, he said he took Arnold to see Dr. Taylor twice and Dr. Hobar four times following the offense, and that his wife brought Arnold to see Dr. Peters[2] at least four times following the offense. Arnold's father said he took Arnold to a gastroenterologist on one occasion "because his liver function went bad." Also, he said that Arnold "saw his therapist" for depression three times since leaving the hospital in October 2015, paying a $25 copay each time. Before the seizure in October, Arnold saw his "therapist" for depression "about once every month" after his hospitalization in February 2009. Sometimes Arnold saw the "therapist" more frequently, according to his father.

Finally, the following exchange transpired during the defense closing argument:

> Defense counsel: What we heard from Mr. Arnold the complaining witness said something about how Medicare pays 20 percent–or pays 80 percent and he pays 20 percent. That was not my understanding of how Medicare works. My understanding also is what the other Mr. Arnold, the father, testified to was there's $20.00 general copay. And we heard a number of copays, but it's not clear what those $20.00 copays equal out to.

> The Court: Well, it's clear to me, because I was totaling it while the witnesses were testifying. I was paying pretty close attention. I took pretty specific notes.

---

[2] The record does not reflect what treatments Dr. Taylor, Dr. Hobar or Dr. Peters provided to Arnold.

Later, after the State argued for $48,141.95 as a just amount of restitution, the court stated "Well, my amount was a little higher than both of your amounts. So, based on the evidence that I received in this hearing, I am going to set restitution at $52,173.95." The trial court rendered judgment awarding restitution in that amount. Little timely appealed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The Texas Code of Criminal Procedure authorizes the sentencing court to order payment of restitution to the victim for losses sustained as a result of the convicted offense. *Maloy v. State*, 990 S.W.2d 442, 444 (Tex. App.–Waco 1999, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West 2015). Article 42.037 states, in pertinent part, that "[i]f the offense results in personal injury to a victim, the court may order the defendant to make restitution to: (A) the victim for any expenses incurred by the victim as a result of the offense[.]" TEX. CODE CRIM. PROC. ANN. art. 42.037(a)(2) (West 2015).

Whether to order restitution as a condition of probation is "within the sound discretion of the trial court." *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex. Crim. App. 1980). However, "the dollar amount is a matter that the court 'shall determine.'" *Id*. The burden is on the "prosecuting attorney" to demonstrate the proper amount of restitution by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 42.037(k). In determining the amount of restitution, the trial court "shall consider: (1) the amount of the loss sustained by any victim and the amount paid to or on behalf of the victim by the compensation to victims of crime fund as a result of the offense; and (2) other factors the court deems appropriate." *Id*. art. 42.037(c).

Due process considerations require that there must be evidence in the record to show that the amount set by the trial court has a "factual basis within the loss of the victim." *See Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999) (citing *Cartwright*, 605 S.W.2d at 289). Such evidence can include testimony by the victim as to medical expenses he incurred as a result

of the offense. *See, e.g.*, *Maloy*, 990 S.W.2d at 444 (other citations omitted). Testimony of the victim of the crime, "who has personal knowledge of the amount of loss, is adequate to support a restitution order." *Thursby v. State*, 2006 WL 1389774, at \*2 (Tex. App.–Dallas May 11, 2006, no pet.).

### III. APPLICATION OF LAW TO THE FACTS

Little contends the restitution amount of $52,173.95 as found by the trial court is not just because the State did not show by a preponderance of the evidence that the amount of restitution ordered has a "factual basis within the loss of the victim." *Campbell*, 5 S.W.3d at 696. We disagree.

Documentary evidence shows $5,160 is owed to Texas Vascular Associates, and the Crime Victims Compensation Fund has paid $38,569.95 on Arnold's behalf, for a total of $43,729.95. The trial court's award of $52,173.95 is $8,444 more than the documentary evidence shows.

Arnold testified that he was treated at the emergency room for seizures at least five times since February 2009, paying a co-pay of $20 each time for a total of $100. Additionally, Arnold testified that he saw an infectious disease doctor "every few days" in July, paying a co-pay of $20 each time. If Arnold visited the infectious disease doctor only once a week for four weeks, he would have visited that doctor four times in July, paying a total of $80 in co-pays. Arnold testified he visited his "family doctor," who conducted blood labs, twice a week for the six weeks preceding the restitution hearing, paying a $20 co-pay each time. Arnold paid at least $240 for those visits. Arnold testified that he was treated by a physical therapist "Monday through Friday" for "two to three months" following his release from the hospital in February 2009, paying a $20 co-pay each time. Based on visits to that therapist for two months, five times per week for eight weeks, Arnold paid $800 in co-pays. Finally, Arnold testified that his

prescription medication has cost between $40 and $120 per month since his release from the hospital in February 2009. Assuming Arnold paid only $40 each time for each of the 80 months since February 2009, Arnold paid as much as $3,200 for medication.

According to Arnold's father, starting in October 2015, Arnold visited an "infectious disease doctor" "every day" for a "few months," paying a $20 co-pay each time. Assuming Arnold visited the infectious disease doctor five days a week for a minimum of two months or eight weeks, he would have visited that doctor 40 times, costing him $800. Arnold's father testified he took Arnold to visit a neurologist ten to fifteen times, and that Arnold paid a co-pay of $20 each time. Assuming Arnold visited a neurologist ten times, this cost him $200. Also, Arnold's father testified that Arnold saw Dr. Taylor twice, Dr. Hobart four times, Dr. Peters four times, and a gastroenterologist one time, paying a $20 co-pay for each of the eleven visits. These visits cost Arnold $220. Arnold's father testified Arnold visited a "therapist" three times between October 2015 and the date of the restitution hearing, paying a $25 co-pay each time, for a cost to Arnold of $75. Further, according to Arnold's father, prior to October 2015 and after his release from the hospital in February 2009, a period of eighty months, Arnold visited his "therapist" once a month, paying a $25 co-pay each time for a total of $2,000. The above-described numbers of visits to physicians, co-pay amounts, and medical expenses are based on a minimum calculation of expenses. However, the record shows the testimony gave a range of the number of visits, amounts, and expenses far above the minimum we identified. The calculation by the trial court falls within a conservative evaluation of the range supported by the testimony.

Accordingly, we conclude in the aggregate, the number of visits, co-pay charges, and medication expenses testified to by Arnold and his father since his release from the hospital in February 2009, in addition to the documentary evidence, totaling $48,141.95, demonstrates that the trial court's award has a "factual basis within the loss of the victim." *See Campbell*, 5 S.W.3d

at 696 (citing *Cartwright*, 605 S.W.2d at 289). We recognize the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Burks v. State*, 876 S.W.2d 877, 909 (Tex. Crim. App. 1994). Therefore, we cannot conclude that the amount of restitution the trial court awarded is unsupported by the record. We decide this issue against Little.

## IV. CONCLUSION

We affirm the judgment of the trial court.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(A)
140697F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ALLEN MAURICE LITTLE, Appellant

No. 05-14-00697-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F-0951721-Y.
Opinion delivered by Justice Lang. Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of June, 2016.